IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD MICHAEL McLAUGHLIN,                     No. 2:13-cv-0924-TLN-CMK-P

               Petitioner,

    vs.                                                    AMENDED  FINDINGS  AND
                                                       RECOMMENDATION
M. SPEARMAN,

               Respondent.

_____/

        Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is Respondent's motion to dismiss (Doc. 10), petitioner's opposition (Doc. 11), and respondent's reply (Doc. 12).  Petitioner also filed a motion for additional time to file a response to respondent's reply (Doc. 13).  Such a pleading is not contemplated by the Federal Rules of Civil Procedure.  However, as petitioner filed his response prior to the court's review of the motion to dismiss, the court has reviewed the response.

        The undersigned issued findings and recommendations on August 18, 2014, addressing the motion to dismiss.  In addition to objections thereto, petitioner also filed a motion for an evidentiary hearing.  That motion was granted, the original findings and recommendations

1

1  were vacated, and a hearing was held on December 17, 2014.  At the hearing, petitioner was

2  granted additional time to submit any other evidence he possessed to support his claim of

3  equitable tolling.  Petitioner has now submitted his additional evidence, and these findings and

4  recommendations, as amended below, are reissued.

5                          **I.     BACKGROUND**

6          Petitioner is challenging his 1996 conviction and sentence out of the Solano

7  County Superior Court.   His conviction was affirmed by the California Court of Appeal in 1997.

8  No direct appeal was filed in the California Supreme Court.  His first habeas petition was filed in

9  the California Supreme Court in 2013.

10                         **II.    MOTION TO DISMISS**

11          Rule 4 of the Rules Governing Section 2254 Cases allows a district court to

12  dismiss a petition if it "plainly appears from the petition and any attached exhibits that the

13  petitioner is not entitled to relief in the district court . . . ."  Rule 4 of the Rules Governing

14  Section 2254 Cases.  The Ninth Circuit has allowed respondents to file a motion to dismiss in

15  lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being

16  in violation of the state's procedural rules.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th

17  Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state

18  remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural

19  grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F. Supp.

20  1189, 1194 & n. 12 (E.D. Cal. 1982) (same).  Thus, a respondent can file a motion to dismiss

21  after the court orders a response, and the Court should use Rule 4 standards to review the motion.

22  See Hillery, 533 F. Supp. at 1194 & n.12.  The petitioner bears the burden of showing that he has

23  exhausted state remedies.  See Cartwright v. Cupp, 650 F.2d 1103, 1104 (9th Cir. 1981).

24          Respondent brings this motion to dismiss Petitioner's habeas corpus petition as

25  filed beyond the one-year statute of limitations, pursuant to 28 U.S.C. § 2244(d).  Petitioner does

26  not dispute the statute of limitations, but asserts that he is entitled to equitable tolling.

Federal habeas corpus petitions must be filed within one year from the later of: (1) the date the state court judgment became final; (2) the date on which an impediment to filing created by state action is removed; (3) the date on which a constitutional right is newly-recognized and made retroactive on collateral review; or (4) the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence.  See 28 U.S.C. § 2244(d).  Typically, the statute of limitations will begin to run when the state court judgment becomes final by the conclusion of direct review or expiration of the time to seek direct review.  See 28 U.S.C. § 2244(d)(1).

Where a petition for review by the California Supreme Court is filed and no petition for certiorari is filed in the United States Supreme Court, the one-year limitations period begins running the day after expiration of the 90-day time within which to seek review by the United States Supreme Court.  See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).  Where a petition for writ of certiorari is filed in the United States Supreme Court, the one-year limitations period begins to run the day after certiorari is denied or the Court issued a merits decision.  See Wixom v. Washington, 264 F.3d 894, 897 (9th Cir. 2001).  Where no petition for review by the California Supreme Court is filed, the conviction becomes final 40 days following the Court of Appeal's decision, and the limitations period begins running the following day.  See Smith v. Duncan, 297 F.3d 809 (9th Cir. 2002).  If no appeal is filed in the Court of Appeal, the conviction becomes final 60 days after conclusion of proceedings in the state trial court, and the limitations period begins running the following day.  If the conviction became final before April 24, 1996 – the effective date of the statute of limitations – the one-year period begins to run the day after the effective date, or April 25, 1996.  See Miles v. Prunty, 187 F.3d 1104, 1105 (9th Cir. 1999).

The limitations period is tolled, however, for the time a properly filed application for post-conviction relief is pending in the state court.  See 28 U.S.C. § 2244(d)(2).  To be "properly filed," the application must be authorized by, and in compliance with, state law.  See

1   Artuz v. Bennett, 531 U.S. 4 (2000); see also Allen v. Siebert, 552 U.S. 3 (2007); Pace v.

2   DiGuglielmo, 544 U.S. 408 (2005) (holding that, regardless of whether there are exceptions to a

3   state's timeliness bar, time limits for filing a state post-conviction petition are filing conditions

4   and the failure to comply with those time limits precludes a finding that the state petition is

5   properly filed).  A state court application for post-conviction relief is "pending"during all the

6   time the petitioner is attempting, through proper use of state court procedures, to present his

7   claims.  See Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).  It is not, however, considered

8   "pending" after the state post-conviction process is concluded.  See Lawrence v. Florida, 549

9   U.S. 327 (2007) (holding that federal habeas petition not tolled for time during which certiorari

10  petition to the Supreme Court was pending).  Where the petitioner unreasonably delays between

11  state court applications, however, there is no tolling for that period of time.  See Carey v. Saffold,

12  536 U.S. 214 (2002).  If the state court does not explicitly deny a post-conviction application as

13  untimely, the federal court must independently determine whether there was undue delay.  See id.

14  at 226-27.

15          There is no tolling for the interval of time between post-conviction applications

16  where the petitioner is not moving to the next higher appellate level of review.  See Nino, 183

17  F.3d at 1006-07; see also Dils v. Small, 260 F.3d 984, 986 (9th Cir. 2001).  There is also no

18  tolling for the period between different sets of post-conviction applications.  See Biggs v.

19  Duncan, 339 F.3d 1045 (9th Cir. 2003).  Finally, the period between the conclusion of direct

20  review and the filing of a state post-conviction application does not toll the limitations period.

21  See Nino, 1983 F.3d at 1006-07.

22          As set forth in the prior findings and recommendations, petitioner is challenging

23  his 1996 conviction.  Petitioner appealed his conviction to the California Court of Appeal, which

24  affirmed his conviction in September 1997.  No appeal was filed with the California Supreme

25  Court, and no post conviction petition for writ of habeas corpus was filed until 2013. The

26  California Supreme Court denied his petition on April 10, 2013, and petitioner filed the current

1   petition on May 10, 2013.

2          The statute of limitations therefore began to run following the Court of Appeal's

3   decision in 1997. The statute expired by the end of 1998, when petitioner did not file either an

4   appeal to the California Supreme Court nor a post-conviction petition for writ of habeas corpus.

5   Petitioner's 2013 petition filed in this court is therefore untimely, and barred by the statute of

6   limitations, unless he is entitled to equitable tolling as he argues.

7          Petitioner contends he is entitled to equitable tolling due to the abandonment of

8   counsel.  He argues he was abandoned by four separate post conviction attorneys, each of whom

9   took his case and his files but failed to file his post-conviction petition to protect his interests,

10  despite his attempts to have them do so.

11         Petitioner is correct, that the Supreme Court has determined the statute of

12  limitations under 28 U.S.C. § 2244(d) is subject to equitable tolling principles.  See  Holland v.

13  Florida, 560 U.S. 631, 649 (2010).  To be entitled to equitable tolling, the petitioner must

14  demonstrate that: (1) he has been diligent in pursuing his rights; and (2) extraordinary

15  circumstances prevented him from filing on time.  See Pace v. DiGuglielmo, 544 U.S. 408

16  (2005).

17         Petitioner contends his situation is equivalent to that in Holland, in that he was

18  abandoned by counsel and despite his many efforts, was unable to timely file his petition.

19  Petitioner argues that following the appeal of his conviction to the California Court of Appeal,

20  which affirmed his conviction in 1997, his attorney, Bloodgood, failed to inform him of the

21  court's opinion for eight months after it was issued.  He states it was not until May 1998 that he

22  was informed the Court of Appeal had denied his appeal.  He further argues that attorney

23  Bloodgood had been retained not only to appeal his conviction, but also to file his state habeas

24  petition.  Bloodgood failed to do so, and failed to inform him of the proceedings in a timely

25  fashion.

26  ///

Following the last correspondence with Bloodgood, in April or May 1998, petitioner claims he hired a new attorney, Dangler, to pursue his post-conviction remedies in early 1999. According to the mail log petitioner provided to the court, and his testimony at the hearing, his first correspondence with attorney Dangler was in May 1999, almost a year after his loss of communication with Bloodgood. Petitioner and attorney Dangler corresponded regularly throughout 1999 and 2000. There was then intermittent communication in 2001 and 2002. In the meantime, petitioner began communicating with attorney Bloom, who was again hired to pursue petitioner's post-conviction remedies. The letters petitioner provides to the court indicate some difficulties Bloom had in obtaining his file from Dangler. There appears to have been regular communication with attorney Bloom from 2001 until 2004, with Bloom providing drafts of a petition to petitioner in 2003. However, by 2006 communication with Bloom had essentially ceased, and petitioner hired yet another attorney in 2007, Bassis. Attorney Bassis apparently communicated with petitioner and worked on another draft petition until 2008, when petitioner complained to the California State Bar about the lack of communication and work product from Bassis despite paying her a retainer. He continued his efforts to communicate with Bassis however, until 2013. He then filed his pro se petition in the California Supreme Court in January 2013, and in this court in May 2013.

At the December 17, 2014, hearing, petitioner testified that there was never a lag between the firing of one attorney and the hiring of a new one. He explained to the court that he was told his case would qualify for equitable tolling, and that it would take several years to complete a writ. He further testified that he attempted a pro se writ sometime in 1998, but was not satisfied with the quality of his work and did not believe his petition was sufficient to succeed on the merits so never filed. He also received several draft petitions from his various attorneys over the years. However, none of them ever completed a final draft and filed it. In addition, he explained that the communication logs he submitted in support of his equitable tolling claim were not completely accurate, as there was a lot of communication by telephone and

1   through his mother.

2         Petitioner was provided an opportunity to submit further documents in support of

3   his equitable tolling claim.  He did so, including the transcript of an interview with his trial

4   counsel, Brady; a few letters between himself and attorney Bloom, one from 2004, one from

5   2005, and two from 2007, which referenced a few phone calls as well; correspondence from

6   attorney Bassis regarding her representation of petitioner; and some additional statements

7   relating the merits of his ineffective assistance of counsel claim.

8         It would appear petitioner has had a difficult time with the attorneys who

9   represented him through his trial and post-conviction.  Apparently at least two of these attorneys

10  have been disbarred, and he had communication issues with all of them.  However, equitable

11  tolling is an extraordinary remedy, and "the threshold necessary to trigger equitable tolling [under

12  AEDPA] is very high, lest the exceptions swallow the rule." Spitsyn v. Moore, 345 F.3d 796, 799

13  (9th Cir.2003) (citation omitted).   It is petitioner's burden to show he is entitled to equitable

14  tolling. See Espinoza–Matthews v. People of the State of California, 432 F.3d 1021, 1026 (9th

15  Cir.2005).  Thus, petitioner must show not only that he was faced with extraordinary

16  circumstances which prevented him from filing on time, but also that he was diligent in pursuing

17  his rights.  The diligence prong in Pace requires the petitioner to show he engaged in reasonably

18  diligent efforts to file his § 2254 petition throughout the time the limitations period was running.

19  Mendoza v. Carey, 449 F.3d 1065, 1071 n. 6 (9th Cir.2006) (stating that equitable tolling

20  "requires both the presence of an extraordinary circumstance and the inmate's exercise of

21  diligence").  The petitioner must also demonstrate that he exercised reasonable diligence in

22  attempting to file his habeas petition after the extraordinary circumstances began, otherwise the

23  "link of causation between the extraordinary circumstances and the failure to file [is] broken."

24  Spitsyn, 345 F.3d at 802.  The "extraordinary circumstances" prong in Pace requires the

25  petitioner to "additionally show that the extraordinary circumstances were the cause of his

26  untimeliness, and that the extraordinary circumstances made it impossible to file a petition on

1   time." <u>Ramirez v. Yates</u>, 571 F.3d 993, 997 (9th Cir.2009) (internal quotations and citations

2   omitted).

3              Here, petitioner claims abandonment by counsel was the cause of his untimely

4   petition, which should be considered an extraordinary circumstance.  In order for the misconduct

5   of counsel to warrant equitable tolling, the misconduct must have been egregious, not merely

6   negligent.  <u>See</u> <u>Holland</u>, 130 S. Ct. At 2564; <u>Spitsyn v. Moore</u>, 345 F.3d 796 (9th Cir. 2003).

7              Petitioner states his appellate attorney failed to notify him of the Court of

8   Appeal's decision affirming his conviction for eight months.  He then claims he attempted to

9   have his attorney file his post-conviction habeas petitions, but those efforts were thwarted by

10  uncooperative and neglectful attorneys.  Assuming, without deciding, that petitioner's claims are

11  sufficient to meet the first prong of extraordinary circumstances, petitioner must also meet the

12  second prong of diligence.

13             As set forth in the prior findings and recommendations, petitioner claims he was

14  not notified of the Court opinion affirming his conviction until May 1998.  He then waited for

15  almost a year of no activity from attorney Bloodgood to hire a new attorney.  He hired attorney

16  Dangler in May of 1999.  Communication with Dangler began to break down by 2001, and

17  petitioner sought an evaluation of his case by attorney Bloom in November 2001.

18  Communication again broke down with attorney Bloom by 2004, but he did not hire attorney

19  Bassis until 2007.  Petitioner was informed that his filings lack the necessary showing of

20  diligence, and he was given an opportunity to provide additional evidence showing his diligence,

21  especially for the three years between 2004 when communication broke down with attorney

22  Bloom until 2007 when he hired Bassis.  He did provide a copy of a few letters which referenced

23  a telephone call between Bloom and petitioner's mother.  However, none of these additional

24  documents, nor petitioner's testimony at the hearing, bring to light any significant support for a

25  finding that petitioner acted with the necessary diligence.  Especially in light of his testimony that

26  he drafted a pro se petition as early as 1998, but never filed it.

Petitioner argues he was as diligent as he could be given his limited legal experience and his inability to obtain assistance from other prisoners given the charges against him.  The best he could do was hire attorneys to assist him, which is what he did.  He claims he had no way of knowing or controlling the lack of ethics of the attorneys he hired.

The undersigned sympathizes with petitioner's plight.  It would appear that petitioner had more than his fair share of difficulties with his representation.  Having one's attorney get disbarred for misconduct is difficult, and petitioner apparently had two.  However, despite the hardships petitioner was faced with, he was still obligated to act diligently in getting a post-conviction petition filed within the statute of limitations.  It is not uncommon for prisoners to have limited education and limited legal experience.  Even those prisoners who have limited reading and writing skills, which is not the case with petitioner, are governed by the same standards.  Section 2254 requires prisoners file their post-conviction petitions within a one-year statute of limitations.  Petitioner's situation is not so unlike other prisoners that he would be entitled to special consideration as to that time frame.  While the undersigned might be inclined to find petitioner entitled to equitable tolling for some of time he was unable to get his attorneys to file his petition despite his request to do so, petitioner gave these attorneys too much time to accomplish what needed to be done within the time set by the statute of limitations. Waiting for a year to pass before hiring new counsel, and not attempting to get a pro se petition on file very shortly after he discovered the lack of his attorneys, does not support his argument that he acted diligently.

The undersigned agrees with petitioner's assessment that "reasonable diligence," not "maximum feasible diligence," is required to demonstrate he is entitled to equitable tolling.  See Holland, 130 S.Ct. at 2565.  Like the instant petitioner, the petitioner in Holland, "not only wrote his attorney numerous letters," he "also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association."  Id. at 2565.  However, Mr. Holland filed his federal petition five *weeks* late, and did so the *very day* he discovered the statute of limitations had run.

Here, petitioner filed his federal petition over fifteen *years* too late, and at least ten to fourteen years after he knew about the statute of limitations issue, and had drafted his own pro se petition, whether he believed it would be successful or not.

Therefore, even if the attorneys' misconduct in this case would be considered an exceptional circumstance, the undersigned has to agree with respondent that petitioner failed to act reasonably diligently in pursuing his rights and getting his post-conviction habeas petition filed. Petitioner's arguments to the contrary, even considering his testimony and additional evidence, are unpersuasive.

**III.    CONCLUSION**

The undersigned finds the petitioner's federal habeas petition was filed beyond the statute of limitations, and petitioner is not entitled to equitable tolling.

Based on the foregoing, the undersigned recommends that petitioner's motion to file a response to respondent's reply (Doc. 13) be granted; and respondent's motion to dismiss (Doc. 10) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 16, 2015

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE